# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| DAMIEN LAMONT GLOVER, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | CV418-020 |
| | ) | CR416-258 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

As set forth in the Court's initial Report and Recommendation:

The Court sentenced Damien Lamont Glover to 151 months' imprisonment after he pled guilty to conspiracy to possess with intent to distribute controlled substances. Docs. 84 (plea agreement) & 85 (judgment).[1] His plea agreement provided that he faced a sentence of up 20 years (the statutory maximum), and he swore that "no one ha[d] promised [him] that the Court will impose any particular sentence or sentence within any particular range." Doc. 84 at 5-6. He further affirmed his understanding that the Court would consider "all of [his] relevant conduct" under the advisory Sentencing Guidelines, "not just the facts underlying the particular Count to which [he] is pleading guilty." *Id*. at 6. Finally, Glover swore that he "had the benefit of legal counsel" who he "believe[d] . . . has represented him faithfully, skillfully, and diligently" and that "he is completely satisfied with the legal advice given and the work performed by his attorney." *Id*. at 8. After sentencing, movant elected *not* to appeal his conviction. Doc. 84 (Notice of Post-Conviction Consultation).[2]

FN. 1  The Court is citing to the criminal docket in CR416-258 unless otherwise noted, and all page numbers are those

> imprinted by the Court's docketing software.
>
> FN. 2 The Notice is a document this Court developed to memorialize counsel's consultation with his client and reflect the client's appeal decision at the time of sentencing. *Green v. United States*, 2017 WL 843168 at *1 (S.D. Ga. Mar. 3, 2017); *see also Guyton v. United States*, 2013 WL 1808761 at * 2 (S.D. Ga. Apr. 29, 2013) (the "Notice of Counsel's Post-Conviction Obligations" requires that both counsel and client execute and file the form, thus preserving a record of defendant's instructions regarding an appeal).
>
> Glover now contradicts these sworn affirmations, seeking to vacate his sentence pursuant to 28 U.S.C. § 2255. Doc. 96. He alleges counsel was ineffective for "misleading" him into pleading guilty, having promised him a sentence capped at "five years," and for failing to appeal his conviction despite being told to do so. Doc. 96 at 13-17.

Doc. 99 at 1-2 (footnote omitted).

The Court recommended denial of Glover's motion after preliminary § 2255 Rule 4 review, but vacated that recommendation to permit Glover to amend his § 2255 motion. Doc. 101. After Glover's various motions for free copies were denied (for failing both to show cause why copies were warranted or poverty to proceed *in forma pauperis*), docs. 103, 108 & 110, Glover finally filed his motion to amend. Doc. 116 (somewhat unintelligibly titled "Motion in compliant to amend without providing petitioner with any of the criminal record file"). The Government moved to dismiss his amended motion, doc. 115, and Glover

2

has not opposed its motion. *See* S.D. Ga. L. R. 7.5 ("Failure to respond within the applicable time period shall indicate that there is no opposition to a motion.").

## I. BACKGROUND

Indicted for conspiracy to possess with intent to distribute and to distribute cocaine, MDMA, and marijuana; maintaining a drug-involved premises; and possession of a firearm in furtherance of a drug trafficking crime, doc. 1, defense counsel negotiated a plea agreement admitting guilt to only the conspiracy charge and capping Glover's possible sentence at 20 years. Doc. 83. During his Rule 11 plea colloquy, Glover swore under oath[1] that he had not been promised any specific sentence and that he knew he could face a maximum sentence of up to 20 years' imprisonment. Doc. 112 at 16-18, 21-22 (swearing both that he understood his sentence "may not be what [his] lawyer has estimated it to be" and that "even though [his] sentence may be more severe than [he] or [his] lawyer have anticipated, [he was] still bound by [his] guilty plea

---

[1] Glover, indeed, was warned at his Rule 11 plea colloquy that "if you ever seek to undo or set aside what occurs here today, you're going to be confronted by the answers you give me." Doc. 112 at 4. He affirmed that he understood the consequences of his statements, made under oath. *Id.*

and [ ] may not withdraw it."); *see also* doc. 83 at 5-6. He swore that he understood that his sentence would be calculated pursuant to the Sentencing Guidelines, which could include enhancement as a career offender. Doc. 112 at 15-17; *see also* doc. 83 at 3. He further affirmed that no one had done anything he considered "wrong or unfair" to force him to plead guilty. Doc. 112 at 18-19, 23.

Glover further swore that counsel had adequately met with him and fully explained the charges against him and the consequences of pleading guilty. Doc. 112 at 11-12. The Court explained the charge he was pleading guilty to (conspiracy to sell cocaine) and the elements of the crime, and Glover swore that he both understood the charge and that he was pleading guilty to it because he was, in fact, guilty. *Id*. at 12-15, 22. The Court found Glover had pleaded guilty both knowingly and voluntarily, *id*. at 23-24, and accepted his guilty plea, *id*. at 32-33. After probation services prepared a Presentence Investigative Report (PSR), Glover filed objections. PSR, Addendum. At sentencing, the Court noted that Glover's leadership role, possession of a firearm, and obstruction efforts warranted his guidelines range of 151 to 188 months' imprisonment. Doc. 97 at 8-9. The Court and the Government further

4

noted on the record that had counsel negotiated a less aggressive plea agreement, defendant "would have been looking at something like 240 months imprisonment." *Id.* at 10.

After giving Glover the opportunity to speak, doc. 97 at 11, the Court sentenced him at the far low end of the Guidelines-range, to 151 months' imprisonment, to be served concurrently with his state probation revocation and with credit for time served not already credited to another sentence. *Id.* at 12-13. The Court informed Glover of his right to file an appeal within 14 days of sentencing. *Id.* at 17. Glover, however, expressly told his lawyer, in writing, not to file an appeal after he was fully informed of his appellate rights. Doc. 84 ("Notice of Post-Conviction Consultation," *see supra* at 2 "FN 2") at 3-4.

## II.   ANALYSIS

Glover raises the same arguments from his original motion, essentially unchanged, *compare* docs. 99 & 116, and adds four new grounds for relief, doc. 116. He argues that counsel was ineffective for 1) failing to negotiate a better plea deal, 2) failing to file a direct appeal challenging his criminal history calculation, 3) failing to file a direct appeal challenging his unexpectedly lengthy sentence, 4) failing to object

5

to the Government's "reneging on the plea agreement," 5) failing to object to the inclusion of "uncharged conduct" in his sentence calculation, 6) failing to move for dismissal after the Court "failed to articulate [ ] or specif[y] as to which of [his] prior state convictions" counted as a career offender predicate, 7) failing to object to his U.S.S.G. § 3B1.1(c) "leadership role" sentencing enhancement, 8) failing to challenge the PSR's recommendation of a two point enhancement for obstruction, and 9) failing to object to the PSR's representation that two prior state convictions counted as separate offenses for career criminal enhancement purposes.  Doc. 116.

"To prevail on a claim of ineffective assistance of counsel, a prisoner must prove that his counsel rendered deficient performance and that he was prejudiced by the deficient performance." *Castillo v. United States*, 816 F.3d 1300, 1303 (11th Cir. 2016) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  "For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence." *Putman v. Head*, 268 F.3d 1223, 1243 (11th Cir. 2001).  To demonstrate prejudice, the prisoner must show "that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Matire v. Wainwright*, 811 F.2d 1430, 1434 (11th Cir. 1987) (same); *see also Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[A]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some *conceivable* effect on the outcome of the proceeding is insufficient to show prejudice."). In other words, mere dissatisfaction with counsel's performance is not enough.

As set forth above, Glover swore under oath that no one, *including his attorney*, had made him any promises not contained in the plea agreement. Doc. 112 at 16-23. He also swore that he fully understood the rights he was giving up by entering a guilty plea and the possible sentence he faced, and that he was fully satisfied with counsel's performance. *Id*. Though he may have harbored doubts about just how much the Government could actually prove against him at trial, his solemn declarations before the Court (*see id*. at 12-15, 22 (admitting the factual allegations of the Government's case against him) & 21-23 (affirming his plea was freely and voluntarily given because he was, in

fact, guilty)) carry a presumption of verity and rightly constitute a formidable barrier for him to overcome in these collateral proceedings. *also Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of veracity."); *United States v. Stitzer*, 785 F.2d 1506, 1514 n. 4 (11th Cir. 1986) ("if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely."); *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014).

This is not a case where defendant repeatedly requested, post-plea colloquy, for counsel to file an appeal and counsel overrode that choice (*e.g.*, as a strategic decision to preserve the plea agreement, as in *Garza v. Idaho*, __ S. Ct. __, 2019 WL 938523 at *5 (2019)). The decision of whether to appeal always remained Glover's. *See McCoy v. Louisiana*, 584 U.S. __, __, 138 S.Ct. 1500, 1507-08 (2018) (the accused has "ultimate authority" whether to take an appeal). But he *declined* to exercise that right, and *unambiguously* ordered counsel not to appeal *in writing*. Doc. 84 at 3-4. Glover's arguments that counsel deficiently promised him a five-year sentence to induce his plea and then failed to appeal the 151-month sentence is blatantly contradicted by the record. Doc. 112 at 16-

8

18, 21-22 (swearing that no one, including counsel, had promised any particular sentence or forced him to plead guilty) & doc. 84 at 3-4 (Notice of Post-Conviction Consultation affirmatively declining to appeal); *see also* doc. 83 at 5-6 (plea agreement).

So too is his contention that counsel failed to file a direct appeal regarding the incorrect calculation of his criminal history. Doc. 84 at 3-4 (affirming that he declined to appeal and had directed counsel accordingly).[2] Moreover, any such argument would have been meritless on appeal. *See infra,* n. 5; doc. 115 at 10-11 (explaining that Glover's state sentences were properly counted as separate offenses, though consolidated for trial by the State, because they involved offenses separated by an intervening arrest within the meaning of U.S.S.G. § 4A1.2(a)(2)); *Diaz-Boyzo v. United States*, 294 F. App'x 558, 560 (11th Cir. 2008) (counsel is not ineffective for failing to pursue a

---

[2] Glover asked for a copy of his criminal file eight months after sentencing. To the extent such a request demonstrated his musings on filing a *pro se* appeal at that time, any appeal would have been grossly out of time. *See* Fed. R. App. P. 4(b)(1)(A) (criminal defendants must file their notice of appeal within 14 days of the entry of judgment); *see also* Fed. R. App. P. 4(b)(4) (providing up to thirty days extension of time to file an appeal, upon a finding of excusable neglect or good cause) & *United States v. Lopez*, 562 F.3d 1309, 1314 (11th Cir. 2009) (if a criminal defendant's notice of appeal is filed more than 30 days after the expiration of that initial 14-day appeal period, the defendant is not eligible for relief under Rule 4(b)(4)).

"nonmeritorious issue"); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (same).

Glover also argues that the Government "reneged" on its promises and his attorney should have lodged objections to that breach. Doc. 117 at 6. But close review of his plea agreement only reveals one promise by the Government: to consider, in its sole discretion, whether Glover's cooperation qualified as "substantial assistance" warranting a motion for a downward departure or sentence reduction. Doc. 83 at 4. That is not a promise to refrain from enhancing Glover's sentence as a career offender, to give him a three-level reduction for acceptance of responsibility, or to reduce his sentence for full cooperation, *see* doc. 117 at 6, and it certainly did not bind the Court in its consideration of any of the above. That the Government declined to file a *discretionary* motion for either a downward departure or a sentence reduction, of course, does not breach or invalidate the plea agreement.

Nor was any promise made not to enhance Glover's sentence for possession of a firearm, doc. 117 at 7-8, even if that count was dismissed as part of his plea agreement. U.S.S.G. § 2D1.1(b)(1); *see United States v. Siegelman*, 786 F.3d 1322, 1330-31 (11th Cir. 2015) (the court must

consider all relevant conduct, including "both uncharged and acquitted conduct that is proven at sentencing by a preponderance of the evidence," in calculating defendant's sentencing range); *see* PSR ¶ 25[3]. Moreover, because of Glover's criminal history, which launched him into career offender territory, *see infra*, the firearm enhancement had no effect on his sentencing. *See* PSR ¶ 32. Thus, counsel was not deficient for failing to argue the point. *Diaz-Boyzo*, 294 F. App'x at 560; *Winfield*, 960 F.2d at 974.

As to his criminal history, Glover had two prior controlled substance convictions. PSR ¶¶ 40 (felony possession of cocaine with intent to distribute) & 42 (felony possession of cocaine and marijuana with intent to distribute).[4] At sentencing, the Court specifically referred

---

[3]  *United States v. Beckles*, 565 F.3d 832, 843-44 (11th Cir. 2009) (even in the absence of supporting evidence, the Court may rely on the undisputed facts in the PSR at sentencing).

[4]  These offenses, arising from March 2004 and April 2005 arrests, were consolidated into one criminal proceeding, and ultimately addressed in one sentence. Glover believes that this means they should only count as a single predicate offense for career offender purposes. But he's wrong, as discussed *supra*: "Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (*i.e.*, the defendant is arrested for the first offense prior to committing the second offense)." U.S.S.G. § 4A1.2(a)(2). These two offenses are indisputably separated by an intervening arrest. Counsel could not have reasonably argued otherwise, before this Court or on appeal.

to these two predicate offenses as underlying its application of the career offender enhancement. Doc. 97 at 12; *see* PSR ¶ 32; *Beckles*, 565 F.3d at 843-44. A defendant qualifies as a career offender under the Guidelines if he is at least 18 years old, has at least two prior felony convictions for either a crime of violence or a controlled substance offense, and his instant federal conviction is for either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a). Possession with intent to distribute a controlled substance (cocaine and marijuana both count) in violation of O.C.G.A. § 16-13-30[5] is a "controlled substance offense" within the meaning of the career-offender Guideline. *See* U.S.S.G. § 4B1.2(b). He also had an obstruction conviction, PSR ¶ 41, which qualified for an obstruction sentencing enhancement. *See* U.S.S.G. § 4A1.2(c)(1). That

---

[5] Glover's January 2006 convictions (for his March 2004 and April 2005 arrests) match the definition of a "controlled substance offense" because: (1) they are state law crimes, (2) punishable by at least five years and up to thirty years, (3) for (a) possession and (b) possession with intent to distribute, of (4) a controlled substance. U.S.S.G. § 4B1.2(b); PSR ¶¶ 40 & 42. In 2004, the statute provided that "[e]xcept as authorized by this article, it is unlawful for any person to manufacture, deliver, distribute, dispense, administer, sell or possess with intent to distribute any controlled substance" and made such a violation "with respect to a controlled substance in Schedule I or narcotic drugs in Schedule II" punishable "by imprisonment for not less than five years nor more than 30 years" on the first offense. O.C.G.A. §§ 16-13-30(b), (d) (effective 1997 through 2012); *see* Ga. L. 1980, p. 432, § 1; Ga. L. 1985, p. 149; Code. Ann. 79A-811(b), (d) (1980); *Dennard v. State*, 265 Ga. App. 229, 229 (2004) (cocaine qualifies as narcotic drug). These offenses are clearly qualifying "serious drug offenses" within the meaning of the Guidelines.

enhancement, however, was also mooted by his career offender designation — which resulted in his bump up to criminal history category VI, PSR ¶ 48. The Court did not err by sentencing Glover as a career offender, and his counsel was not deficient for failing to argue that it had erred or that his thence-mooted obstruction enhancement should be stricken from the PSR. *Diaz-Boyzo*, 294 F. App'x at 560; *Winfield*, 960 F.2d at 974.

Glover finally contends that counsel should have objected to the application of any leadership enhancement. Doc. 116 at 10. After all, he contends, the phone calls the Government relied upon to demonstrate his control and direction over the conspiracy were "to his Grand Mother, Brother, and Wife, who are Neither Members of a[n] Organized Crime, nor Criminal Empire, or Enterprise" such that a four-point U.S.S.G. § 3B1.1(c) enhancement was warranted. *Id*. But Glover did not object to the PSR's detailing of the enhancement, PSR ¶ 29, nor could he: Glover described *himself* as "King" of the drug dealing in his neighborhood. PSR ¶ 14. His entire family and circle of friends were involved, at his beck and call, even while he was detained at Chatham County Detention Center: his wife, his brother, "Uncle Robbie," and others among them.

13

PSR ¶¶ 5, 10-11, 15-16. Regardless, because of that career offender enhancement, this four-point enhancement too was mooted by his assignment of Criminal History category VI. PSR ¶¶ 32, 48. Counsel cannot be deficient for failing to argue for the deletion of a mooted enhancement.[6] *Diaz-Boyzo*, 294 F. App'x at 560; *Winfield*, 960 F.2d at 974.

Accordingly, Damien Lamont Glover's § 2255 motion should be **DENIED**.[7] For the reasons set forth above, it is plain that he raises no substantial claim of deprivation of a constitutional right. Accordingly, no certificate of appealability should issue. 28 U.S.C. § 2253; Fed. R. App. P. 22(b); Rule 11(a) of the Rules Governing Habeas Corpus Cases Under 28 U.S.C. § 2255 ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). Any

---

[6] To the extent movant seems to ask the Court for a minor role sentence reduction (*see* doc. 117 at 11) despite the evidence of his leadership role, the Court has no authority to do so under § 2255. If that's what he wants, he can seek that relief under 18 U.S.C. § 3852(c) — not a motion for collateral relief. *See United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010).

[7] Because his motion is entirely without merit and his contentions are unambiguously contradicted by the record, an evidentiary hearing is not warranted. *Lynn v. United States*, 365 F.3d 1225, 1239 (11th Cir. 2004) (where the motion "amount[ed] to nothing more than mere conclusory allegations, the district court was not required to hold an evidentiary hearing on the issues and correctly denied [movant]'s § 2255 motion.").

motion for leave to appeal *in forma pauperis* therefore is moot.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542,

545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this <u>4th</u> day of February, 2019.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA